UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TONIA A. STRICKLAND, | ) | CASE NO. 3:17CV2243 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Tonia A. Strickland ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on March 5, 2018, Plaintiff asserts that the administrative law judge ("ALJ") failed to: (1) articulate a valid reason at step two for finding the Plaintiff did not have a severe impairment related to her migraine headaches and neurocardiogenic syncope; (2) state valid reasons for rejecting the opinions of the treating physicians; (3) properly evaluate Plaintiff's credibility; and (4) meet the burden at step five. ECF Dkt. #18 at 13-23. Defendant filed a response brief on May 3, 2018. ECF Dkt. #20. Plaintiff filed a reply brief on May 15, 2018. ECF Dkt. #21.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

---

[1] On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI alleging a period of disability beginning on November 1, 2011.  ECF Dkt. #15 ("Tr.") at 247-59.[2]  These claims were denied initially and upon reconsideration.  *Id.* at 80-141.  Plaintiff then requested a hearing before an administrative law judge, and a hearing was held on February 4, 2016.  *Id.* at 71.  During the hearing, the ALJ experienced computer problems and the hearing was continued.  *Id.* at 78.  The hearing resumed on July 19, 2016, and Plaintiff amended the alleged onset date to June 12, 2013.  ECF Dkt. #17 at 3.[3]  After the hearing, the ALJ issued an unfavorable decision on August 17, 2016.  Tr. at 23.  Subsequently, the Appeals Council denied Plaintiff' request for review.  *Id.* at 1.  Accordingly, the August 17, 2016, decision issued by the ALJ stands as the final decision.

The instant suit was filed by Plaintiff on October 24, 2017.  ECF Dkt. #1.  Plaintiff filed a brief on the merits on March 5, 2018.  ECF Dkt. #18.  Defendant filed a response brief on May 3, 2018.  ECF Dkt. #20.  Plaintiff filed a reply brief on May 15, 2018.  ECF Dkt. #21.

## II.    RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

In December 2012, Plaintiff was diagnosed with migraines with photophobia, aura, and nausea without vomiting.  Tr. at 427.  After complaints of occasional lightheadedness in March 2013, Plaintiff was diagnosed with dizziness, giddiness, and anemia.  *Id.* at 452.  In May 2013, Plaintiff was further diagnosed with syncope and carpal tunnel syndrome after expressing concern over a fainting spell.  *Id.* at 460-63.  A nerve conduction study, also completed in May 2013, was positive for bilateral median neuropathies suggestive of mild left hand carpal tunnel syndrome.  *Id.* at 412-14.  Plaintiff was diagnosed with bilateral carpal tunnel syndrome on June

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

[3]The testimony offered at the hearing held on July 19, 2016, was filed as a supplemental transcript.  ECF Dkt. #16; ECF Dkt. #17.

6, 2013. *Id.* at 407. Surgery was performed in June 2013, and during an examination on August 1, 2013, it was determined that the wound had healed and Plaintiff was referred for physical therapy. *Id.* at 492, 600.

In March 2014, Plaintiff was examined for a frontal headache with nausea and light sensitivity, and it was determined that she had a migraine headache. Tr. at 721. On June 25, 2014, Joseph Boecker, D.O., examined Plaintiff, noted that she had a history of depression, and wrote a letter indicating that she was unable to work. *Id.* at 698, 729. In July 2014, Plaintiff began treatment with Elliot Goldstein, M.D. *Id.* at 745. Plaintiff's diagnosis was modified to major depressive disorder in January 2015. *Id.* at 733. Dr. Goldstein noted that Plaintiff had carpal tunnel pain and migraine headaches in April 2015. *Id.* at 731. Plaintiff reported a second blackout on July 25, 2015. *Id.* at 775.

After participating in counseling, Plaintiff was diagnosed with major depressive disorder with recurrent episodes in September 2015. Tr. at 834. The diagnosis of generalized anxiety disorder was added later that month. *Id.* at 826. In November 2015, Plaintiff reported bilateral hand pain, numbness, and tingling. *Id.* at 873. Plaintiff was diagnosed with bilateral carpal tunnel syndrome. *Id.* at 874. X-rays taken in November 2015 showed mild arthritis of the thumb and radiocarpal joint in the left hand and mild arthritis at the thumb base in the right hand. *Id.* at 869, 871.

In March 2016, Plaintiff underwent surgery for a left carpal tunnel release. Tr. at 898. An MRI of Plaintiff's brain revealed a small venous angioma in the left frontal parietal lobe region. *Id.* at 886-87. Plaintiff attended physical therapy after her carpal tunnel release surgery in May 2016, but was instructed to put the therapy on hold. *Id.* at 982-1011. On June 6, 2016, Plaintiff tested positive for median nerve and carpal compression. *Id.* at 931. Plaintiff continued to report pain in her left wrist in June 2016. *Id.* at 966-68.

### B.     Testimonial Evidence

On February 4, 2016, the ALJ held a hearing with Plaintiff, her attorney, and a vocational expert. Tr. at 73. Plaintiff was examined by her attorney and testified that she graduated from high school and attended one year of college. *Id.* at 76. Continuing, Plaintiff stated that she had

previously been working assembling calendar sheets and that the work was supposed to be light work but her supervisor "had [her] doing work that [she] wasn't supposed to be doing." *Id.* at 78. The ALJ then continued the hearing after the computer used to conduct the hearing malfunctioned. *Id.*

On July 19, 2016, Plaintiff, her attorney, and a VE appeared before the ALJ to resume the hearing. ECF Dkt. #17 at 1025. Plaintiff was examined by the ALJ and testified that she was living with a family member who received disability payments, that she had medical insurance, and that she had a driver's license and could drive, but did not have a car. *Id.* at 1030-31. Continuing, Plaintiff stated that she was 5' 6" and weighed 551 pounds. *Id.* at 1031. Plaintiff then amended the alleged onset date to June 12, 2013, and the ALJ accepted the amendment. *Id.* at 1032. Next, Plaintiff stated that she had previously worked assembling eyeglasses, running her own daycare, operating machinery, packing cookies, and assembling automobiles. *Id.* at 1032-34.

Plaintiff was then examined by her attorney and testified that she stopped working in 2013 due to carpal tunnel in her right hand. ECF Dkt. #17 at 1038. Continuing, Plaintiff stated that she had problems with her right hand and "could not do anything" with her left hand. *Id.* Plaintiff indicated that the pain in her right hand was 9/10 and that it came and went daily. *Id.* at 1039-40. When asked how many hours she was pain free in a day, Plaintiff stated two hours. *Id.* at 1040. Plaintiff stated that the pain in her left hand was 10/10 and lasted all day, every day. *Id.* When asked about treatment for her left wrist, Plaintiff stated that she had not had treatment because her insurance expired. *Id.* at 1041.

Plaintiff testified that she cried and did not want others invading her personal space. ECF Dkt. #17 at 1042. Next, Plaintiff stated that she had anxiety attacks but that they were infrequent. *Id.* at 1043. Continuing, Plaintiff stated that she had three anxiety attacks in total. *Id.* at 1044. Plaintiff testified that she had one to two migraines per week and that she had to stay in bed during the migraines. *Id.* at 1046. Next, Plaintiff stated that she was unable to use her left hand due to scar tissue and that she could only lift ten to fifteen pounds with her right hand. *Id.* at 1047. Further, Plaintiff stated that she was short of breath at times and experienced

back pain when sitting or standing for long periods of time. *Id.* at 1048.  Plaintiff stated that she could stand for twenty-five minutes before needing to lie down and that she did not have trouble walking.  *Id.* at 1049.  When asked why she was unable to work, Plaintiff testified that she could not perform work due to her carpal tunnel syndrome and migraines.  Tr. at 1050.

Next, the ALJ asked the VE to consider a hypothetical individual of the same age, educational background, and past relevant work experience as Plaintiff that could perform light work.  ECF Dkt. #17 at 1053.  The VE testified that this individual could perform Plaintiff's past relevant work as a daycare worker and lens inserter, and could also work as a library clerk and cashier. *Id.* at 1053-54.  Next, the ALJ posed a hypothetical individual that was also limited to occasional handling and no driving.  *Id.* at 1055.  The VE indicated that this individual could perform work as a furniture rental clerk.  *Id.* at 1056.  A third hypothetical individual limited to sedentary work was then posed by the ALJ.  *Id.* at 1057.  The VE testified that such an individual could perform work as a lens inserter, document preparer, and callout operator.  *Id.* at 1057-58.  Continuing, the VE explained that the additional limitation of occasional bilateral handling would preclude all work.  *Id.* at 1058-59.  The VE stated that if the limitation was instead for only the left hand, the individual could work as a document preparer, callout operator, and fundraiser.  *Id.* at 1059.  Plaintiff's attorney then asked the VE if these jobs would be available if the hypothetical individual would miss two days per month and the VE responded in the negative.  *Id.* at 1060.  Following the questions asked by Plaintiff's attorney, the ALJ concluded the hearing.  *Id.* at 1064.

### III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On August 17, 2016, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI.  Tr. at 23.  In the decision, the ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016.  *Id.* at 28.  Continuing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2013, the alleged onset date.  *Id.*  The ALJ then determined that Plaintiff had the following severe impairments: carpal tunnel syndrome and depression.  *Id.*  Next, the ALJ stated that Plaintiff did

not have a condition or combination of condition that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 29.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b) with the additional limitation of simple routine tasks. Tr. at 31. The ALJ then found that Plaintiff was capable of performing past relevant work as a lens inspector and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 35. For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 12, 2013, through the date of the decision. *Id.* at 37.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

### VI. LAW AND ANALYSIS

#### A. Step Two

Plaintiff first asserts that the ALJ did not articulate a valid reason at step two of the sequential evaluation for failing to find that she had a severe impairment related to her migraine headaches and neurocardiogenic syncope. ECF Dkt. #18 at 13. Continuing, Plaintiff states that the ALJ found that there was insufficient evidence to demonstrate any limitations she might have

-7-

due to her headaches and found the headaches to be non-severe, but then accommodated the headaches in the RFC finding. *Id.* at 14-15. Plaintiff states that these findings are contradictory and that the combination of medical and testimonial evidence show that the headaches were severe. *Id.* at 15. Further, Plaintiff claims that the ALJ discounted her neurocardiogenic syncope and failed to consider her anxiety attacks. *Id.* at 15-16.

Defendant contends that substantial evidence supports the ALJ's step two finding. ECF Dkt. #20 at 6. Continuing, Defendant states that the proper question is not whether the ALJ mentioned every severe impairment at step two, but whether the ALJ's conclusion that Plaintiff could perform her past relevant work or other work is supported by substantial evidence given the combination of all severe and nonsevere impairments. *Id.* at 7. Defendant avers that substantial evidence supports the ALJ's finding that Plaintiff's migraine headaches and neurocardiogenic syncope were not severe. *Id.* Specifically, Defendant notes that Plaintiff's migraines were controlled with medication and she worked for three to four years with the allegedly disabling migraines. *Id.* at 7-8. As for Plaintiff's neurocardiogenic syncope, Defendant states that Plaintiff fails to show how three episodes over a three-year period establish limitations so severe as to interfere with simple, light work. *Id.* at 8. Additionally, regarding Plaintiff's alleged anxiety, Defendant asserts that she testified that she did not often have anxiety attacks and that the record shows that she consistently denied experiencing anxiety. *Id.* (citing Tr. at 427, 429, 440, 444, 449, 451, 457, 462, 466, 478, 1043).

Plaintiff's argument is without merit. The Sixth Circuit has explained that when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any failure to find additional severe impairments at step two does not constitute reversible error. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ determined that Plaintiff had the severe impairments of carpal tunnel syndrome and depression, and then continued the sequential evaluation. Tr. at 28-29.

Additionally, this is not a case in which the ALJ failed to consider the claimant's alleged severe impairments. The ALJ specifically discussed Plaintiff's migraine headaches, noting that: Plaintiff experienced the headaches once or twice per week; all neurological exams, EEGs, and MRIs were normal; and there was insufficient evidence to demonstrate any limitations the headaches might impose on Plaintiff. Tr. at 29. Further, the ALJ's indication that any limitations the headaches might impose were accommodated in the RFC finding is not inconsistent with the statement that there was no evidence to demonstrate limitations caused by the headaches. Rather, the ALJ's remarks indicate that there was insufficient evidence to demonstrate any limitations caused by the headaches, but in the event the headaches did cause the limitations alleged by Plaintiff, those limitations would be accommodated by the RFC finding.

As for her neurocardiogenic syncope, the ALJ indicated that an EEG and a brain CT scan taken after an episode of lightheadedness were negative. Tr. at 29. The ALJ then noted that Plaintiff had three episodes over a period of three years and that such infrequent occurrences without further symptoms presented minimal interference with her ability to perform work activities. *Id.* Regarding her anxiety attacks, Plaintiff testified that she experienced the attacks infrequently and she does not cite any evidence in her brief indicating otherwise. Tr. at 1043; *see* ECF Dkt. #18 at 15-16. Accordingly, Plaintiff has failed to show that the ALJ erred when failing to find that the migraine headaches, neurocardiogenic syncope, or infrequent anxiety attacks constituted a severe impairment. For these reasons, the ALJ's decision at step two of the sequential evaluation is supported by substantial evidence.

### B. Treating Physician Rule

Plaintiff asserts that the ALJ failed to state valid reasons for rejecting the opinions of her treating physicians, Dr. Assenmacher, Dr. Boecker, and Dr. Goldstein. ECF Dkt. #18 at 16. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's

opinion, he or she must provide "good reasons" for doing so.  Social Security Rule 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004).  Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Plaintiff claims that it is unclear what medical evidence was used to support the ALJ's RFC finding and that the ALJ did not "build an accurate and logical bridge between the evidence documenting [Plaintiff's] disabling problems as set for by the [] treating physicians." ECF Dkt. #18 at 16, 19. Additionally, Plaintiff claims that the ALJ cherry picked evidence that would support his conclusion that she did not have any limitations related to her bilateral carpal tunnel syndrome. *Id.* at 19. Defendant contends that the ALJ properly evaluated the medical opinion evidence and properly explained why less than controlling weight was assigned to the opinions of Dr. Assenmacher, Dr. Boecker, and Dr. Goldstein. ECF Dkt. #20 at 8-11.

The ALJ complied with the treating physician rule by providing "good reasons" for discounting the opinions of Plaintiff's treating physicians. Regarding Dr. Assenmacher, the ALJ explained the findings and then stated that said findings were inconsistent with his treatment record. Tr. at 34. The ALJ noted that Dr. Assenmacher indicated that pain was present but did not prevent functioning, but in the same document stated that Plaintiff could rarely push or pull and was limited to lifting five pounds or less. *Id.* Continuing, the ALJ found that these limitations were excessive and inconsistent. The ALJ also stated that it appeared that Plaintiff's carpal tunnel surgeries were successful and that there was insufficient time for the surgery on Plaintiff's left wrist to resolve. *Id.* Additionally, the ALJ stated that there was nothing in the record to suggest that any impairment would persist at the pain levels Plaintiff alleged for the required twelve-month period. *Id.*

As for Dr. Boecker's opinion, contained in a letter, the ALJ correctly indicated that it was without an explanation or basis, and instead merely stated that Plaintiff was disabled, a decision reserved for Defendant. Tr. at 34-35. A review of the letter containing Dr. Boecker's opinion confirms the ALJ's indication that the decision offered therein is unsupported by any medical findings. *Id.* at 729. Dr. Boecker's opinion simply states that Plaintiff is unable to work and that her ability to return is unknown. *Id.* The letter does not provide any functional limitations indicating why Plaintiff would be unable to work. Accordingly, the ALJ properly assigned less than controlling weight to Dr. Boecker's conclusory opinion. *Id.* at 35.

The ALJ also addressed the opinion of Dr. Goldstein. Tr. at 35. Specifically, the ALJ noted that despite Plaintiff's reports of severe psychiatric symptoms, her mental status exams were generally unremarkable. *Id.* The ALJ supported this finding with citations to the medical evidence that was detailed earlier in the decision. *Id.* It is noted that the ALJ stated that "Dr. Goldstein's statement does not provide functional limitations." *Id.* While Dr. Goldstein's opinion does list Plaintiff's symptoms and diagnosis, the opinion does not indicate how her mental impairments would cause functional limitations that would impact her ability to perform work-related activities beyond the conclusory statement that Plaintiff was unable to work. *Id.* Accordingly, the ALJ properly determined that there was minimal evidence to support Dr. Goldstein's conclusion and that the opinion lacked functional limitations. *Id.* For these reasons, the ALJ provided "good reasons" for assigning less than controlling weight to the opinions of Dr. Assenmacher, Dr. Boecker, and Dr. Goldstein.

### C. Credibility

Plaintiff claims that the ALJ did not properly evaluate her credibility. ECF Dkt. #18 at 20. Plaintiff asserts that the ALJ found that her comments regarding the limiting effects of her symptoms were not entirely consistent with the evidence and that she stopped working due to carpal tunnel syndrome but admitted surgery was effective. *Id.* at 21. According to Plaintiff, these findings that formed the basis for the credibility decision were not supported by the medical evidence. *Id.* Defendant asserts that the ALJ reasonably evaluated Plaintiff's subjective symptoms and that the ALJ's findings concerning subjective symptoms should be accorded great weight and deference. ECF Dkt. #20 at 11 (citing *Walters v. Comm's of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ's credibility determination was within the zone of reasonable choice. *See Blakely v. Comm'r of Soc. S*ec.*,* 581 F.3d 399, 406 (6th Cir. 2009); *Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986). The ALJ provided a thorough recitation of the medical and opinion evidence presented in this case. Tr. at 31-35. Considering all of the evidence and Plaintiff's testimony, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and

other evidence in the record. Tr. at 32. The ALJ expressly discussed, among other pieces of evidence: improvement in Plaintiff's right wrist after surgery; x-rays that showed mild arthritis; decreased pain in the left wrist after surgery; x-rays showing a normal left wrist; the lack of evidence relating to depression prior to late 2014; and unremarkable mental status examinations.

The ALJ's credibility determination was based on substantial evidence, especially considering the deferential standard accorded to the ALJ in the determination. Plaintiff has failed to show that the ALJ's credibility determination was not based on substantial evidence and fails to cite evidence detracting from the reliability ALJ's determination. Accordingly, the ALJ's credibility determination does not warrant remand in this case.

### D. Step Five

Finally, Plaintiff asserts that the ALJ improperly found that she could return to her past job as a lens inserter and failed to meet the burden imposed at step five of the sequential evaluation. ECF Dkt. #18 at 22. Specifically, Plaintiff states that the ALJ should have included limitations regarding handling and fingering in the RFC. *Id.* Plaintiff claims that the ALJ failed to meet the burden imposed at step five because the VE only identified one job that she could perform at the light exertional level with the additional limitation of only occasional handling. *Id.* at 23.

Defendant contends that it was Plaintiff's burden to show that she could not perform her past relevant work and that she failed to meet that burden. ECF Dkt. #20 at 13. Additionally, Defendant states that even if Plaintiff had handling limitations, the VE identified jobs such as a furniture rental clerk that could be performed at the light exertional level with occasional bilateral handling, and jobs such as cashier, library clerk, and furniture rental clerk that could be performed at the light exertional level with occasional handling in the left hand. *Id.* at 14. Defendant also notes that the VE identified jobs that could be performed at the sedentary exertional level with occasional handling in the left hand. *Id.* Finally, Defendant asserts that the ALJ's identification of one job that Plaintiff could perform is sufficient to preclude a finding of disability. *Id.* at 15 (citing 20 C.F.R. §§ 416.920(g), 416.966(b)).

-13-

Plaintiff bears the burden of proving that she is disabled. *Moon*, 923 F.2d at 1181. As discussed above, the ALJ's decision is supported by substantial evidence. Plaintiff has failed to show that the ALJ's RFC finding should have included limitations regarding handling and fingering, and she cites no medical or opinion evidence demonstrating that the ALJ erred in her brief beyond stating:

> [B]ased on [Plaintiff] continuing to have symptoms of bilateral carpal tunnel syndrome, that ALJ should have included limitations regarding handling and fingering in his RFC.

*See* ECF Dkt. #18 at 22-23. This disagreement with the ALJ's RFC finding does not now allow Plaintiff to impose additional RFC limitations absent a showing that the ALJ's RFC finding was not supported by substantial evidence. Plaintiff has made no such showing and therefore the ALJ was not required to consider limitations regarding handling and fingering, and did not err at step five of the sequential evaluation.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: January 28, 2019        */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).